The Iowa Homestead Co. v. Duncombe.

the action, and the court, therefore, erroneously sustained the demurrer.

REVERSED.

### THE IOWA HOMESTEAD CO. v. DUNCOMBE.

1. **Practice in the Supreme Court:** ADMISSION OF EVIDENCE. A party cannot be heard on appeal to assign error in the admission of evidence based upon another ground than that assigned at the time the evidence was introduced.

2. **Evidence:** ERROR IN ADMISSION OF: HOW CURED. Error cannot be predicated upon the admission of evidence, when the fact which it is introduced to establish is proved by other testimony introduced without objection.

3. **Practice in the Supreme Court:** QUESTIONS NOT RAISED BELOW. An action at law will not be reversed on appeal upon questions not passed upon by nor presented to the court below.

*Appeal from Webster Circuit Court.*

SATURDAY, JUNE 14.

THIS is an action upon four promissory notes executed by the defendant to the plaintiff for five hundred dollars each, and amounting, with interest, to nearly three thousand dollars. The defendant, by his answer, admits giving the notes; says they were given for a part of the purchase price of a half section of land bought by him of plaintiff, and which he immediately fenced and took possession of; that he paid at the time of purchase, in cash and taxes of 1872, six hundred dollars; that the plaintiff had no title to the land; that the consideration for the notes has failed; that he was compelled, in 1873, to purchase the land from the Des Moines Valley and Des Moines & Fort Dodge Railroad Companies, owners of the land, and paid therefor four thousand one hundred and twenty dollars; that he paid said companies in cash one thousand one hundred and twenty dollars, and the balance in the surrender to said companies of a contract for five hun-

dred and sixty acres of land, owned by said companies, whereby they acknowledged full payment, and relinquished all their right, title and interest to the defendant; that said contract, at the time of its surrender, was worth three thousand dollars, and the land therein described was worth three thousand dollars; that defendant had no copy of the contract surrendered to attach to his answer. Defendant demanded judgment against plaintiff for five hundred dollars, with interest from November 21, 1872, the date of the contract with plaintiff. There was a jury trial, and a verdict for defendant for seven hundred and thirty-four dollars and thirty-seven cents. The defendant remitted all of this verdict in excess of three hundred dollars. The motion for new trial was overruled, and judgment was rendered for defendant for three hundred dollars and costs. The plaintiff appeals.

*Hubbard, Clark & Deacon,* for appellant.

*John F. Duncombe,* for appellee.

DAY, J.—I. It is admitted that the documentary evidence introduced relative to the title of the Des Moines & Fort Dodge Railroad Company to the land described in the defendant's answer shows that the paramount, legal, fee simple title of said land was in the Des Moines & Fort Dodge Railroad Company at the time the defendant claims to have bought the lands in question from said company. The real question in controversy is whether the defendant is entitled to any, and if so to what, amount of damages from the plaintiff on account of the plaintiff's inability to make title to the defendant. The defendant's testimony shows that he paid upon the land, under the contract, five hundred dollars, and the further sum of fifty-five dollars and ninety-two cents for taxes. He also executed the four notes sued upon for the deferred payments. It is evident that if the defendant paid no more for the outstanding title than the amount of these four notes and interest he

*1. PRACTICE in the supreme court: admission of evidence.*

has sustained no damage, since he had acquired the title for what he agreed to pay the plaintiff. Upon the other hand, if the defendant paid more for the outstanding title than the amount of these four notes and interest, he has sustained damage to the extent of the excess of payment, and under certain conditions he would be entitled to recover this excess of the plaintiff to the extent of the payments actually made under the contract and interest. The defendant claims to have paid for the outstanding title, in cash, only one thousand one hundred and twenty dollars. The balance of the consideration of four thousand one hundred and twenty dollars, alleged to have been paid, is made up of the alleged surrender of a contract which the defendant received for a patent for five hundred and sixty acres of land. It is apparent that the terms and value of this contract became a most material inquiry in the case.

The defendant was introduced as a witness in his own behalf, and testified as follows: "I bought in the title from the Des Moines Valley company, and paid for it in cash one thousand one hundred and twenty dollars, and surrendered the contract."

The plaintiff then objected to the contract as incompetent, irrelevant and immaterial. The objection was overruled. Plaintiff excepted. The witness further testified as follows:

"The consideration was one thousand one hundred and twenty dollars in cash, and surrendering a contract, which I held at the time, of the Des Moines Valley Railroad Company, which was of the full value of not less than three thousand dollars. The contract was in writing. I surrendered it to them."

This closed the first direct examination. No objection was interposed to this evidence except as above stated.

The first error assigned relates to the admission of this evidence, and is as follows:

"The court erred in receiving the testimony of the defendant, Duncombe, as to the alleged contract claimed by him to

have been surrendered in the purchase of the paramount title."

It is argued, under this assignment of error, that, the contract being in writing, parol evidence of its contents was inadmissible. The objection to this evidence was not placed upon the ground that the evidence offered was secondary in its character. The objection was "to the contract as incompetent, irrelevant and immaterial," not that the contract could not be proved by parol. If the objection had been distinctly placed upon this ground, probably the defendant would have accounted for the absence of the original writing, and would have rendered parol evidence of its contents proper. The defendant, having objected upon one ground in the court below, cannot be allowed to rely upon an entirely different objection in this court. The contract was not incompetent, irrelevant or immaterial. This is the only question which the court below determined in passing upon the objection. It is this decision of the court alone which we can review under this assignment.

II.   In the testimony just considered the defendant stated, without objection, that the contract was of the full value of

1. EVIDENCE:
error in admission of: how cured.

not less than three thousand dollars.   The plaintiff, upon cross-examination, introduced what the defendant admitted to be a substantial copy of the contract surrendered by him.   Upon re-examination the defendant was asked the following question:

"State the value of the contract in cash to you, marked exhibit 'B,' about which you have been examined, at the time you surrendered and cancelled this contract as the part consideration of the purchase of the south half of section 35, the land in controversy?"

The plaintiff objected to this proposed evidence because "it is immaterial, incompetent, irrelevant, and shows in no fact any payment or consideration which will be allowable in addition to the deed which has been introduced by the party himself."

The objection was overruled and plaintiff excepted. The witness answered:

"The actual cash value of that contract to me I could consider at least three thousand dollars. I so considered it at the time I surrendered it."

The witness was then asked the following question:

"State in what consisted the value of this contract to you."

This question was objected to on the same ground as above. The objection was overruled and the plaintiff excepted. The witness answered as follows:

"The value of this contract consists in the fact that it gave me title to two hundred and forty acres of land in section 25; one hundred and sixty acres of land in section 13, 89, 29. The land at the time was worth not less than eight thousand dollars. The land at that time was in controversy between the Des Moines Valley Railroad Company and the Iowa Homestead Company, which this contract included as belonging to me, and which I had bought of the Iowa Homestead Company. I had performed service for that company, for which this contract was given, and did afterward, in pursuance of this contract, perform legal services for the company in securing some seventy-five thousand dollars of aid to be voted to the company; in taking charge of and looking to the correctness of the proclamations and petitions; in assisting and securing the right of way of this road from the Des Moines river to the north line of this county; in going before the council of this city and in securing aid from this city to pay the right of way; in going with General Reid, the agent of the company, to secure taxes in Badger township, and going with him into Humboldt county to secure aid voted by tax in that county; and also conveying, or causing to be conveyed, one third of the depot grounds which are here in Fort Dodge. The interest I had in the property at that time was about four hundred dollars. I also conveyed, or caused to be conveyed, about one-third of

the right of way from Des Moines river to the Des Moines Valley Railroad depot, and assisted in every way to secure this, and assisted to secure twenty thousand dollars subscription for that company in this town, which I did in pursuance of this contract, and the services I performed and the property I gave to the company were well worth, over and above the amount provided for the securing of this to the D. & S. C. R. Co., or their assigns, $3,000. Also, in pursuance of that contract, I made an arrangement whereby I could secure a patent for myself from the State, through Governor Carpenter, through whom certificates and patents were to come, and through the register at Des Moines; so, without the surrender of this contract, I would undoubtedly have been able to secure the titles to these five hundred and sixty acres of land—the five hundred and sixty acres spoken of in the contract I had bought before. The piece in section 13, of the D. & S. C. R. Co., I had bought in 1862; that portion in 25 I think I bought in 1866, and afterward brought suit for the amount I paid to make the title good, and recovered judgment for it, of course."

The second assignment of error is that "the court erred in allowing the defendant Duncombe to testify as to the value of his alleged contract claimed to have been surrendered in the purchase of the paramount title." The objection urged under this assignment is that it was error to allow the witness and defendant Duncombe to state generally that the contract claimed to have been surrendered by him was worth three thousand dollars, and that it was worth that amount to him. It is to be observed that this testimony is but a repetition of what had before been admitted without objection. Besides, in the further examination of the witness, above set out, he testified fully as to what constituted the value of the contract, and stated specifically the services which he had rendered under it, and which constituted its consideration, as well as the value of the land embraced in it. If it should be conceded that there was error in allowing the

The Iowa Homestead Co. v. Duncombe.

defendant to state generally the value of the contract, the error was cured by the subsequent specific evidence given.

III. After the defendant's testimony was concluded, the plaintiff moved to strike out all of the defendant's evidence in relation to the contract, upon various grounds set forth in the motion. The overruling of this motion is made the basis of the fourth assignment of error. This assignment seems not to be relied upon in the argument and should be disregarded, at least so far as it sets up grounds of objection not already passed upon.

IV. When defendant came to introduce his deed from the Des Moines & Fort Dodge Railroad Company, conveying the paramount title, for which he insisted he had paid four thousand one hundred and twenty dollars, it was found that the deed was a joint deed to Charles B. Richards and defendant, and that, instead of conveying the paramount title to the defendant, it conveyed that title to the defendant and Richards jointly. Thereupon the defendant, against the objection of plaintiff, was allowed to testify that Richards' name was put into the deed by error. This was done for the purpose of showing that the defendant held the paramount title for all the land for which he claims his notes were given. The action of the court in admitting this evidence is assigned as error. The jury found for the defendant seven hundred and thirty-four dollars and thirty-seven cents. This verdict must have been based upon a finding that the defendant paid for the paramount title for all the land at least seven hundred and thirty-four dollars and thirty-seven cents more than the amount of the unpaid notes and interest, and hence was entitled to recover of plaintiff that much of the consideration actually paid. Upon the filing of the motion for a new trial the defendant remitted four hundred and thirty-four dollars and thirty-seven cents of the verdict, so as to make the amount of the recovery three hundred dollars. It is plain that if the defendant, through his deed, acquired title to only an undivided one-half of the land, the verdict was,

The Iowa Homestead Co. v. Duncombe.

through the remittance, reduced below an amount properly recoverable for that half, upon the basis of calculation adopted by the jury. If it should be conceded, therefore, that there was error in the admission of this evidence, the error was cured by the remittance.

V. The plaintiff, in several instructions, in effect asked the court to instruct the jury that no damages could be allowed the defendant by reason of the alleged surrendered contract. The refusal to give these instructions is assigned as error. It appears from the copy of this contract, offered in evidence by the plaintiff, that it was executed on behalf of the Des Moines Railroad Company, by H. T. Reid, as attorney and general agent for said company. In addition to the objections urged to the proof of this contract, which have already been passed upon, it is now urged that there was no competent evidence in relation to this contract before the jury, because there was no evidence that Reid had any authority to execute it, and that, for this reason, these instructions should have been given. No objection to the contract was made in the court below upon the ground of Reid's want of authority to execute it, nor do the instructions under consideration in any manner direct the attention of the court to this question. If the point had been in any manner raised, it is probable that proof of Reid's authority would have been introduced. The plaintiff, by failing to raise the objection in the court below, waived it. It would be a manifest injustice to parties to reverse a law action upon a point never passed upon by nor presented to the court below. There was no error in refusing these instructions asked.

*3. practice in the supreme court: questions not raised below.*

VI. It is claimed generally that the instructions given invade the province of the jury and take from the jury, practically, all the disputed facts.

1. The defendant, in his answer, alleged that he had bought in the paramount title of the land from the owner. The replication denied this. The deed introduced showed that defendant and Richards had bought in the paramount

title. The court, in the second instruction, told the jury that "the evidence introduced shows that the plaintiff had no title to the land, *and that the defendant has since bought in the title from the owner.*" It is admitted in the abstract that the evidence does show that the paramount legal fee simple title was in another than the plaintiff. This is equivalent to an admission that the plaintiff had no title. There was no prejudice, therefore, in the giving of the first part of the clause objected to. The italicised portion of the clause is not in strict accord with the fact as proved, but no prejudice can now result therefrom in view of the remittance by defendant of more than half the verdict.

2. The defendant alleges in his answer that the notes were given for certain land. The reply denies all the allegations of the answer. The court, in its first instruction, told the jury that the notes were given for the purchase of the land. It does not appear that there was any conflict in the evidence upon this point. There was no prejudicial error in giving the instruction.

3. The defendant, in his answer, alleged that he was to pay the plaintiff for the land two thousand five hundred dollars and the taxes of 1872, of which he paid in cash five hundred dollars and the taxes. This was·denied. The court instructed that "the consideration to be paid plaintiff was two thousand five hundred dollars and the taxes of 1872, of which defendant paid five hundred dollars and the taxes." Upon this point, also, there does not seem to have been any conflict of evidence.

4. It was alleged in the answer that the defendant paid one thousand one hundred and twenty dollars in cash to purchase the paramount title. This was denied by the reply. The defendant testified that he did pay that amount, but the deed showed that the purchase was made on behalf of defendant and Richards. The court, in its third instruction, told the jury: "It is shown that the defendant paid one thousand one hundred and twenty dollars cash for the ownership of the

land, to purchase in the outstanding title." This, as we have before seen, if error in fact, was error without prejudice.

5. It was alleged in the answer that the defendant surrendered a certain contract in the purchase of the outstanding title, which was worth three thousand dollars. The general denial in the reply put in issue this entire allegation. The court told the jury: "The question, therefore, really is as to the value of the claim surrendered to the Des Moines Valley Railroad Company." This was the real question in the case, under the evidence, and the court did not err in telling the jury so. We have passed upon all the errors discussed. The record discloses no reason for disturbing the judgment.

AFFIRMED.