.HOLBROOK BROS., Appellees, v. MILL OWNERS' MUTUAL INSURANCE COMPANY, Appellant.

1. **Fire Insurance:** ASSESSMENT: NOTICE: REGISTERED LETTER: EVIDENCE. The articles of a mutual fire insurance company provided, that it should be considered due notice of an assessment when the secretary should "mail by registered letter" to each member such notice as was therein provided for, and that any member failing to pay such assessment within thirty days from the time such notice was "mailed" should be suspended. *Held,* that a letter deposited in the postoffice, properly stamped, and in condition for registry upon the sixth day of the month, but the registry of which was not completed by the postoffice employes until the next day, could not be considered as having been *mailed,* as provided in said articles, until the latter ·date.

2. ——: ——: PAYMENT: COMPUTING TIME. The plaintiff's assessment was paid on the thirty-first day after the mailing of said notice, which fell on Monday. *Held*, that under the provisions of subdivision 23, of section 45, of the Code, that when in computations of time the last day falls on Sunday, the time prescribed should be extended so as to include the whole of the following Monday, the payment was in time to avoid the suspension of the plaintiff as a member in the defendant company under the above provisions of its articles.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, OCTOBER 12, 1892.

ACTION upon a policy of insurance upon a steam flouring mill, with its machinery and contents, situated at Onawa, in Monona county. There was a trial by jury, and a verdict and judgment for the plaintiffs. The defendant appeals.—*Affirmed.*

*George F. Henry*, for appellant.

*J. S. Monk* and *McMillan & Kendall*, for appellees.

ROTHROCK, J.—I. The policy in suit was issued by the defendant to the plaintiffs on the ninth day of October, 1889, and by its terms the insurance was to be in force so long as the insured should remain members of said company. At the time the insurance was effected the plaintiffs executed and delivered their promissory note to the defendant for the sum of four hundred dollars, to be paid in such portions and at such times as might thereafter be ordered in accordance with the provisions of the articles of incorporation. There was a stipulation in the note in these words: That it "was given as a basis for assessment, as provided in the articles of incorporation of said company, and no single assessment shall exceed the amount named in this note." The mill and machinery

1. FIRE insurance: assessment: notice: registered letter: evidence.

and contents were totally destroyed by fire on the ninth day of March, 1890. There is no dispute as to the fact that the property was insured by a valid policy, and it is conceded that it was destroyed by fire at the time above stated, and the only real ground of defense is that the plaintiffs failed to comply with the requirements of the contract by the payment of an assessment upon said note within the proper time, and that the policy was for that reason suspended at the time the property was destroyed. The said defense is set up in the answer in the following language:

"That on the fourth day of February, 1890, the amount of the loss upon the mill of one H. Wessel, of Luzerne, Benton county, Iowa, who held a policy of insurance in the defendant company for five thousand dollars, was determined to be the sum of six thousand, seven hundred dollars; that thereupon the secretary of the defendant company caused to be mailed to the plaintiffs, under the firm name of Holbrook Bros., a notice of the amount of such loss with the name of the loser and the amount of said Holbrook Bros.' proportion of the assessment for for the payment of such loss, together with an assessment for incidental or current expenses. A copy of such notice is hereto attached, marked 'Exhibit A,' and made a part hereof. That such notice was mailed at the postoffice in the city of Des Moines, Iowa, by registered letter, addressed to said firm of Holbrook Bros., Onawa, Iowa, on the sixth day of February, 1890. That such assessment was not paid to the secretary at his office within thirty days from the time such notice was mailed, as is required by article 14 of the articles of incorporation of the defendant company, and, as is therein provided, said policy was suspended after the expiration of the thirty days, and was suspended at the time of the burning of the plaintiff's

VOL. 86—17

mill, as stated in their petition, such assessment being unpaid at such time." Article 14 of the articles of incorporation is as follows:

"When any assessment is made upon the members of this company, as provided in these articles, it shall be considered due notice thereof when the secretary shall mail by registered letter to each member such notice as is herein provided for; and, if any member shall fail to pay said assessment to the secretary, at his office, within thirty days from the time such notice is mailed, any policy given by this company to him shall be suspended, and ten days thereafter the penalty shall be added to his assessment, as provided in article nine, and the secretary shall proceed to collect as therein provided."

The defendant contends that the notice of the assessment was mailed by "registered letter" on the sixth day of February, 1890, and the plaintiffs contend that the registry and mailing of the letter was not completed until the seventh day of that month. We think it fairly appears from the evidence that the registration of the letter was not completed until February 7. This is apparent from the registered letter envelope with its indorsements made at the postoffice at Des Moines. It is indorsed thereon that the letter was "registered February 7, 1890," and on the reverse side of the envelope it appears that the railway postal clerk received the registered letter from the Des Moines postoffice on February 8. The envelope was postmarked, "February 7, 1890. Des Moines, Iowa." The letter was recived at Onawa on the eighth day of February, 1890, and the record made in that office shows that it was registered on the seventh day of that month. There is no real conflict as to the time when the registration was completed. It is true the evidence in behalf of the defendant tends to show that some two hundred and sixty or two hundred and seventy-

five letters were deposited by the defendant with the postmaster for registry on the sixth day of February, 1890, and that they were properly stamped and in condition for registry. Certain postoffice regulations were introduced in evidence upon the trial, one of which is as follows:

"When a letter or parcel is presented for registration, the postmaster will examine it to see that the sender has complied with the requirements of the preceding section, and, if such be the case, he will enter on the registration book the name and address of the sender, name of addressee and destination of letter or parcel, registered number and date of mailing, filling out a like stub of the book and registered receipt. He will number the letter or parcel to correspond with number on stub and registry receipt, sign the receipt, separate it from the stub and give it to the sender."

It appears that the defendant keeps an assessment register and a "registered letter book." The registered letters and the registered letter book were taken to the postoffice on the sixth day of February, and the letters were left in the registry department, and the book was also left for the purpose of checking up the letters on the book. The clerk who delivered the book and letters made an entry in the defendant's book showing the mailing to have been made on the sixth day of February, and the book was signed by the postmaster. The witness who made the deposit of the book and the letters testified that he was in the postoffice possibly three minutes, and that he does not know how long it took to get the letters out. It does not appear when the defendant received its registry book from the postoffice. There is no pretense or claim that the messenger remained there and received the receipt provided for in the postoffice regulation above set out. It is further provided in said regulations that "after the receipt has been given therefor and the matter num-

bered as provided in the preceding sections, the letter or parcel becomes registered and must be guarded with the utmost care."

It is insisted by counsel for the appellant that it should be held that the notice was complete when the letter was deposited for mailing, because the sender had then discharged his duty in regard thereto, and had no control over the postoffice officials as to the time within which the letter was forwarded. It appears to us that the ready answer to this claim is that the articles of incorporation provide that a registered letter shall be mailed. It cannot be a registered letter until the post-office regulations are complied with, and the sender's duty as to the service of the notice is not performed until the sender has his receipt, which is the evidence that the letter has been registered and mailed. Since the submission of this case this court has determined, in effect, that the mailing of the registered letter containing a notice of assessment constitutes notice as of the date of the mailing. *Ross v. Hawkeye Insurance Co.*, 83 Iowa, 586.

II. The court directed the jury to return a verdict for the plaintiff. We think there was no error in this ruling. The notice of assessment was mailed, and service thereby had, on the seventh day of February, 1890, and the property destroyed on Sunday, the ninth day of March, 1890. The payment of the assessment was required to be made within thirty days from the time the notice was mailed. The last of the thirty days was Sunday, the ninth day of March. It is provided by subdivision 23, section 45, of the Code, that "in computing time the first day shall be excluded, and the last included, unless the last falls on Sunday, in which case the time prescribed shall be extended so as to include the whole of the following Monday." The fact is that the assessment was paid on Monday, March 10, and

2. ——: ——:
payment:
computing
time.

under the above statute it was within the time fixed by the articles of incorporation. The payment was received by the company under a stipulation that no rights were waived thereby. We mention this fact, that it may be understood that the decision is put upon the ground that by strict legal right the plaintiffs were not in default in paying the assessment. And we desire to say in conclusion that, where rights are made to depend upon constructive service of notice, and forfeitures are demanded by reason of a failure to respond to such notices, as the law abhors forfeitures, the party demanding that a forfeiture be enforced should be held to a strict compliance with all the provisions of the contract providing for a forfeiture. Applying this rule to the facts in this case, we are satisfied that the defendant should have deposited the letter in the postoffice at Des Moines within such time as it would have been put in the register envelope, and be ready to deliver to the mail carrier on the sixth day of February, 1890.

This disposition of the case renders it unnecessary to determine other questions discussed by counsel. AFFIRMED.