THE HARTFORD TRUST COMPANY, ADMINISTRATOR OF THE ESTATE OF LUDLOW BARKER, DECEASED, *vs.* THE TOWN OF WEST HARTFORD. JOHN R. FENN *vs.* THE TOWN OF WEST HARTFORD. CAROLINE F. ROBERTS *vs.* THE TOWN OF WEST HARTFORD. LINUS T. FENN ET UX. *vs.* THE TOWN OF WEST HARTFORD.

First Judicial District, Hartford, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

In defining and establishing lost and uncertain highway boundaries, selectmen must comply strictly with each of the requirements enumerated in the statute, § 2083, otherwise their proceedings are defective for want of jurisdiction.

Such proceedings involve the property rights of adjoining proprietors, and these cannot be injured or destroyed save by due course of law after a hearing or an opportunity to be heard.

The requirement that the selectmen "may" cause a map of the highway to be made, is mandatory in effect, since provision is made for giv-

ing a printed notice to each known adjoining proprietor of the time when and place where such map may be examined before the hearing. The obvious purpose of this provision is to afford interested landowners an opportunity to see, from an inspection of the map, what relation their own claims bear to the fences and actually existing bounds, and to the supposed original highway lines, all of which the statute requires to be delineated upon such map.

A map which fails to show the actually existing fences and bounds and also the bounds as claimed by adjoining proprietors, does not comply with the statute.

The notice required by the statute to be given to adjoining proprietors may properly be sent by mail, but the failure to serve any notice upon certain proprietors renders the proceedings of no effect as to them.

Proof of service of notice by mail should show the existence of the conditions upon which the validity of such service depends, and that the notice, properly addressed with postage prepaid, was duly deposited in the mail.

The recipient of a marked copy of a newspaper is not chargeable with notice of what may be contained in its advertising columns.

Recording the decision of the selectmen upon the relocation of lost or uncertain boundaries, in the land records of the town, is not a constructive notice to adjoining proprietors who have never been legally notified, nor can it operate to validate the decision as to such proprietors.

An adjoining landowner who has no notice or knowledge of the relocation of lost highway bounds cannot be chargeable with laches, provided he protests to the selectmen as soon as it becomes apparent to him that the town is about to infringe his property rights, and thereafter and without unreasonable delay takes legal action to protect his interests; for until there has been a breach of duty there can be no laches.

The defendant offered evidence of the establishment of building lines on the street in question several years after the alleged relocation of the boundary line of the highway, for the purpose of showing that the true street line coincided with that fixed by the relocation decision. *Held* that inasmuch as the time in which the plaintiff could have appealed from the relocation decision had long since passed, the offer was immaterial and raised a collateral inquiry.

A witness for the plaintiff was asked how a row of trees was regarded, when he was a boy, with relation to the highway, and answered that they were generally considered its south boundary. *Held* that while it would be difficult to support this inquiry, its admission did no harm to the defendant since it subsequently offered evidence to establish facts in accord with the answer of the witness.

A party is limited, in his assignment of errors, to the claims of law which he made in the trial court.

Argued October 4th—decided November 1st, 1911.

SUIT to restrain the defendant town from taking a strip of land, alleged to be owned by the plaintiff, for highway uses, brought to and tried by the Superior Court in Hartford County, *Bennett, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

Three other cases against the same defendant, similar in their facts, were tried and determined at the same time in favor of the respective plaintiffs.

The plaintiffs own land on the south side of Farmington Avenue in the town of West Hartford. On February 7th, 1900, a proprietor of land adjoining this avenue made written application to the selectmen of said town for the establishment of the bounds of said avenue, which had become lost and uncertain. Thereupon the selectmen caused to be printed a notice, in conformity with the statute (now General Statutes, § 2083), of the place and time when and where all parties in interest might be heard.

The statute (§ 2083) provides that upon such application the selectmen "may cause to be made a map of such highway, showing the fences and bounds as actually existing, and the bounds as claimed by adjoining proprietors, and shall also cause to be placed on said map such lines as in their judgment coincide with the lines of the highway as originally laid down."

After this application the selectmen prepared no map, but had at that time in their possession a map of said avenue, including the portion in question, prepared in 1898, without reference to § 2083. This map did not show the fences and bounds as claimed by adjoining proprietors. It contained one line only as the south

line of said avenue, with nothing to show how it affected adjoining proprietors.

The lines of the highway on the map are those which, in the judgment of the selectmen, coincided with the lines of the highway as originally laid down, but there was nothing on the map to indicate this. In fact the true south line of the avenue at this point runs about two and one half feet north of the south line indicated on the map.

The selectmen did not send any notice of said hearing to the plaintiffs, nor did they receive notice of the same by publication or otherwise. The hearing was duly held, but none of the plaintiffs were present or represented.

The selectmen caused a notice of their decision to be printed in conformity with the statute, but did not send notice of their decision to the plaintiffs, nor had they notice or knowledge of the same. The decision adopted, as the lines of the highway, the lines on said map, the south line of which varied from the true line by about two and one half feet.

The town voted, in the spring of 1909, to adopt certain plans for lowering the grade of the highway in front of plaintiffs' premises. Said plans, if carried out, would lower the grade of the highway and extend the south line about two and one half feet south of the true south line, making it correspond with the south line as attempted to be established by the decision.

The plaintiffs learned of the proceedings for the re-establishment of the lines of the highway, and of the decision of the selectmen, in the spring of 1909.

On September 4th, 1909, the town and State entered into a contract to change the grade of said avenue in accordance with said plans. On November 5th, 1909, this action was begun. If carried out, these plans would take for highway purposes a strip of the plain-

tiffs' land adjoining the avenue on the south for its entire length, and would greatly disfigure and render unsightly and inaccessible their property, and cause them irreparable damage.

*William F. Henney*, with whom was *David Henney*, for the appellant (defendant).

*George O. Brott* and *George J. Stoner*, for the appellee (plaintiff).

WHEELER, J. The defendant assigns as error the finding of the trial court that the proceedings taken to establish the lost and uncertain bounds of Farmington Avenue were not taken in accordance with § 2083 of the General Statutes, in that the map of the highway was not prepared and exhibited, and notices of the hearing and of the decision of the selectmen were not given as required by the provisions of this statute.

Strict compliance with each of the enumerated steps of the statute was the condition of the validity of the entire proceeding. Failure to comply with any of the required steps would constitute a jurisdictional defect. *Keifer* v. *Bridgeport*, 68 Conn. 401, 405, 411, 412, 36 Atl. 801. The plaintiffs' rights of property were involved, and could not be injured or destroyed save by "due course of law," after hearing had and opportunity given to be heard. *Northrop* v. *Waterbury*, 81 Conn. 305, 309, 70 Atl. 1024; *Nichols* v. *Bridgeport*, 23 Conn. 189, 208; *Abbot* v. *Banfield*, 43 N. H. 152, 155.

The statutory requirement in relation to the exhibition of the map, is permissive in terms but mandatory in effect. It says "may": it means "must"; for it recites, the selectmen shall cause a notice to be printed and sent to each proprietor, setting forth the time and place when the aforesaid map may be seen.

The obvious purpose of the statute was to afford proprietors the opportunity to see, from an inspection of the map, the relation the bounds claimed by the adjoining proprietors bore to the actual fences and bounds and the lines of the highway as originally laid out. With this knowledge the proprietors could protect their interests by making a suitable presentation of their claims to the selectmen, and by duly taking an appeal from their decision.

Procuring the claims of adjoining proprietors preceding the exhibition of the map was indispensable, yet so far as appears no attempt was ever made to obtain these. The map exhibited did not conform to the statute; it did not contain the actual fences and bounds, nor the bounds as claimed by the adjoining proprietors.

The south line of the highway upon the map, though believed by the selectmen to be as originally laid out, was in fact two and one half feet south of the true south line, and the map itself did not refer to any proceeding to establish lost and uncertain bounds.

The notice of the hearing did not contain a description of the map called for by the statute. Evidence was offered that the notice of the hearing as published was sent to some of the proprietors, but none that any notice properly addressed with postage prepaid was duly mailed to these plaintiffs. The written or printed notice to be sent each known adjoining proprietor might properly be sent by mail.

Proof of service of notice by mail should show compliance with the conditions of its existence, and show that the notice, properly addressed, with postage prepaid, was duly deposited in the mail. 29 Cyc. pp. 1119, 1123. The failure to send such a notice was fatal to the proceeding as against these plaintiffs.

The notice of the decision of the selectmen was given by mailing to each adjoining proprietor a marked copy

of a newspaper containing an advertisement of the notice. This was ineffective as a legal notice. One cannot be charged with notice of what may be contained in the advertising columns of a newspaper, though the copy received by him be a marked copy. *Clark* v. *Ricker*, 14 N. H. 44, 48; *Watkins* v. *Peck*, 13 N. H. 360, 373; *United States* v. *Pinover*, 3 Fed. Rep. 305, 308.

Moreover, no evidence was offered that such a paper, properly addressed, with postage prepaid, was duly mailed to any of these plaintiffs.

The evidence fully supported the finding as to what the map contained, and the sending and receipt of the notices.

We cannot agree with the defendant that the recording of the decision was constructive notice to these plaintiffs. In no event could the recording take the place of the notices required by the statute. Further, the decision as to these plaintiffs was a nullity, for without compliance with the statutory steps the selectmen were without jurisdiction to render it, therefore the recording of the decision did not validate it or make of it notice to any proprietor who had not been given the notices specified by the statute.

One other of the defendant's contentions remains to be noticed. It urges that "the plaintiffs, having had actual notice of the re-establishment proceedings and having failed for a period of approximately ten years to object thereto by way of appeal or otherwise," are estopped by laches from the equitable relief sought.

The finding disposes of this. The plaintiffs never had notice or knowledge of the re-establishment of the lost bounds until after the town had voted to "improve" the highway and the engineers had driven stakes indicating the line claimed south of the true south line of the highway. Seeing this, the plaintiffs immediately protested to the selectmen. Their opportunity to ap-

peal from the re-establishment decision had been long since lost by lapse of time through no fault of theirs.

Assignments of error are limited to the claims of law made in the trial court; hence this defendant cannot avail itself of a claim of laches based upon the failure of the plaintiffs to act from the time they knew of the re-establishment decision, in the spring of 1909, until this action was begun on November 5th, 1909. If the defendant were in a position to properly make this contention the finding would conclude it. So far as appears the plaintiffs did not know of the proposed contract between the selectmen, the State and the contractor, before it was entered into, nor does it appear when such knowledge came to the plaintiffs. As soon as the plaintiffs knew of the proposed invasion of their rights they protested to the town officials; they could not be expected to anticipate that the town would disregard their protest and enter into a contract of the character of that disclosed by the record. There was no inexcusable delay in the protection of their interests; nor such a delay as to prejudice the defendant's rights in view of the protest made it. *Hartford* v. *Mechanics Savings Bank,* 79 Conn. 38, 41, 63 Atl. 658; *Byrne* v. *Schuyler Electric Mfg. Co.,* 65 Conn. 336, 355, 31 Atl. 833. Upon the facts found there was no duty resting on these plaintiffs to have secured an earlier intervention of judicial action; and without breach of duty there can be no laches. *Allis* v. *Hall,* 76 Conn. 322, 334, 56 Atl. 637.

The rulings on evidence complained of are not ground of reversible error.

The offer of the defendant to prove the establishment of building lines in 1902–1904, was properly excluded. This evidence was offered to show that the south lines of Farmington Avenue corresponded with the south line of the re-establishment decision, and that

the plaintiffs had notice of these building line proceedings. The time in which the plaintiffs could have appealed from the decision of the selectmen had long since passed, and for this reason the offer, for such a purpose, was immaterial and invited collateral inquiry.

For the purpose of proving the true south boundary of this avenue, a witness sixty-eight years of age, who had been born near the place in question and had lived there during his youth, was asked by the plaintiffs this question: "When you were a boy, how were these trees regarded with relation to the highway?" The witness replied they were generally considered the south boundary of the highway.

It would be difficult to support this question, either in its substance or its form, and the latter was not objected to. It is clear that its admission did not harm the defendant, since it subsequently offered evidence to prove, and claimed to have proved, facts in accord with the answer given.

The corrections of the finding should be denied; the evidence amply supports the finding.

There is no error.

In this opinion the other judges concurred.